IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MELVA K. CRAWFORD,     )
     )
     Plaintiff,     )
     )
     )     CIV-05-583-L
v.     )
     )
JO ANNE B. BARNHART,     )
  Commissioner of Social Security     )
   Administration,     )
     )
     Defendant.     )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her concurrent applications for disability insurance and

supplemental security income benefits under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1382.   Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and Plaintiff has filed a reply.   The matter has

been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28

U.S.C. § 636(b)(1)(B).   For the following reasons, it is recommended that the

Commissioner's decision be affirmed.

I. Background

Plaintiff filed her applications for benefits on March 11, 2003, alleging that she

1

became disabled on February 9, 1998. (TR 54-56, 280-282).  Plaintiff alleged disability due to "memory loss, carpal tunnel in both wrist [sic], asthma, ... arthritis in both shoulders and arms[, and] depression." (TR 66).  Plaintiff described a tenth grade education and past relevant work as a restaurant cook and nurse's assistant. (TR 72, 75).  She stated her doctor advised her to stop working because of her "wrist" in February 2003. (TR 90).  In a subsequent administrative filing, Plaintiff alleged that she had arthritis in her left elbow and that her asthma was worse. (TR 101).  She was being treated by Dr. Gilbert, with follow-up visits scheduled every three months. (TR 102).  Plaintiff's applications were administratively denied. (TR 27, 28, 283-288).

With her request for hearing filed November 24, 2003, Plaintiff alleged that she was experiencing chest pain due to a "heart problem." (TR 105).  She also stated that she had been hospitalized at the Pauls Valley General Hospital for one night in October 2003 for "chest pains from heart attack." (TR 106).  She listed her medications at that time as nitroglycerin tablets for chest pain and an inhaler for asthma, both prescribed by Dr. Gilbert. (TR 106).  A hearing *de novo* was conducted before Administrative Law Judge Kirkpatrick ("ALJ") with respect to Plaintiff's applications on June 9, 2004, at which Plaintiff and Plaintiff's friend testified. (TR 342-383).

Following this hearing, the ALJ issued a decision in which the ALJ reviewed Plaintiff's previous applications for supplemental security income benefits filed in 1996 and 2000. (TR 14-15).  The ALJ concluded there was no basis for reopening these previous applications. (TR 15-16).  The ALJ further found that although Plaintiff alleged she became

2

disabled in February 1998, Plaintiff returned to work in 2001 after her second application was denied, earning over $6,000.00 in income in 2001 and over $6,000.00 in income in 2002. (TR 15).  The ALJ further noted that the Plaintiff had not earned sufficient wages to be insured for disability insurance benefits until January 1, 2003. (TR 15).  Accordingly, the ALJ concluded that Plaintiff must show she was disabled after January 1, 2003, for the purpose of her Title II disability insurance benefits application.  (TR 15).  The ALJ further found that Plaintiff worked until at least February 1, 2003, although there were inconsistent statements in the record made by Plaintiff and her attorney as to when she actually stopped working and that her "work activity after February 2003 is unclear." (TR 15, 17).

The ALJ further found that Plaintiff has severe impairments due to asthma and generalized arthritis. (TR 17).  Although the ALJ considered Plaintiff's allegations of severe impairments due to depression and heart problems, the ALJ found that there was no objective evidence showing that Plaintiff had a severe impairment due to heart disease or a mental impairment. (TR 17-18).  Despite her severe impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary activity. (TR 18-19).  The ALJ referred to specific  medical records supporting this RFC finding. (TR 19-20).  In his decision, the ALJ further reviewed the Plaintiff's subjective statements and the credibility of her allegation of disabling pain and other symptoms.  The ALJ's decision reflects his consideration of both Plaintiff's testimony and the testimony of the lay witness concerning Plaintiff's daily activities and functional abilities. (TR 21-22).  The ALJ found that Plaintiff's allegations of disabling symptoms were not credible because they not

3

supported by the objective medical evidence and because the record reflected inconsistencies in Plaintiff's statements that detracted from her credibility.  The ALJ referred to specific evidence in the record to support this credibility determination. (TR 22-23).  Employing the agency's Medical-Vocational Guidelines, often  called the "grids," the ALJ concluded that, given Plaintiff's RFC and vocational characteristics, the grids dictated a finding of "not disabled," and, therefore, the Plaintiff was not disabled within the meaning of the Social Security Act. (TR 23-25).

Plaintiff requested review of the ALJ's decision by the Appeals Council, and with her request for review she submitted additional medical records related to the period of time before the date of the ALJ's decision.  (TR 295-341).  The Appeals Council considered this evidence, as required by 20 C.F.R. § 404.970(b), and found that the additional evidence did not provide a basis for altering the ALJ's decision. (TR 6-7). The Appeals Council consequently declined Plaintiff's request to review the ALJ's decision. (TR 6-8).

II. Plaintiff's Contentions and Defendant's Response

Plaintiff now requests judicial review of the final decision of the Commissioner embodied in the ALJ's determination.  Plaintiff contends that the ALJ erred in relying on the grids to find her not disabled in light of the effects of the combination of her severe impairments and her severe, or at least significant, "heart impairment," "mental impairment," and "hand impairment" upon her RFC for work.  Plaintiff also contends that the ALJ erred in failing to develop the record by obtaining medical expert testimony or ordering a consultative examination with respect to Plaintiff's "heart impairment."  Plaintiff's Brief, at

4

10-11.  Defendant Commissioner responds that no error occurred with respect to the ALJ's evaluation of the evidence and that there is substantial evidence in the record to support the Commissioner's decision.

III. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence.  Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(per curiam).  If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(per curiam).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion.  Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i), 1382c(a)(3)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f) (2005); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail).  The claimant bears the initial burden of proving that she has one or more severe impairments.  20 C.F.R. §§404.1512, 416.912 (2005); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

IV. Duty to Develop the Record

Plaintiff asserts that the ALJ should have ordered a consultative examination of Plaintiff or obtained expert medical testimony with respect to her alleged heart impairment.[1] "[W]here the medical evidence in the record is inconclusive, ... a consultative examination is often required for proper resolution of a disability claim." Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).  In this case, the ALJ had no responsibility to order further

---

[1]Plaintiff relies on Grogan v. Barnhart, 399 F.3d 1257 (10th Cir. 2005), in support of this contention.  She refers to the decision again in her reply brief and points out that the Defendant failed to address the decision.  However, Plaintiff does not refer to any particular page in the decision but merely asserts the "premise" of the decision.  It is not this Court's obligation to review an entire decision in order to ascertain its relevance to a litigant's arguments.  Plaintiff's counsel is cautioned that generalized references to legal authority are not considered persuasive support for a legal argument.

development of the record where the record provided sufficient medical evidence from which the ALJ could determine the existence or nonexistence of a severe impairment. Id. at 1167. There is no dearth of medical evidence in the record with respect to Plaintiff's allegation of disabling chest pain and other symptoms due to a heart impairment.  The reports of Dr. Gilbert and other treating physicians who have evaluated Plaintiff's subjective complaints of chest pain, shortness of breath, and other symptoms appear throughout the record, and the records reflect interpretations and medical analyses by treating medical professionals of numerous, objective, cardiac-related tests.   The ALJ did not falter in his obligation to develop the record as to Plaintiff's alleged heart impairment, and no error occurred in this regard.

V. Severe Impairments

The ALJ found that Plaintiff was not disabled at the fifth step of the requisite sequential evaluation procedure.  Although the claimant bears the burden of proving at the first four steps that she is not working, has one or more severe impairments, is not presumptively disabled, and can no longer perform her past relevant work, the burden of proof at step five shifts to the Commissioner to demonstrate that the claimant "retains the ability to do alternative work and that such work exists in the national economy." Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987).   To satisfy this burden, the Commissioner may demonstrate that the claimant has the ability to perform "a substantial majority of the work in [a] designated RFC category" by reliance on the grids. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995).  If this "fundamental factual predicate is not borne out by the evidence,"

the Commissioner may also satisfy the step five burden of proof, generally through expert testimony, by "establish[ing] the claimant's ability to perform, some specific occupation(s) which - however few in themselves - encompass a significant number of available jobs." Id. In Evans, the Tenth Circuit Court of Appeals recognized that "the grids impose a heightened threshold requirement to justify the substitution of a general rule for the particularized, albeit less onerous, proof otherwise necessary to deny benefit at step five." Id.

Plaintiff relies on the decision in Evans in asserting that she has additional severe or significant  limitations caused by a "heart impairment," a mental impairment due to depression, and a "hand impairment" which precluded the ALJ's reliance on the grids for his step five decision.  Although Plaintiff attempts to couch her arguments as a challenge to the Commissioner's failure to satisfy the burden of proof at the fifth step of the requisite sequential evaluation procedure, Plaintiff also asserts that the ALJ's decision at the second step of the evaluation was not supported by substantial evidence.

Plaintiff contends that the ALJ erred in failing to find that she has a severe heart impairment because "the record contains sufficient objective evidence to suggest that Ms. Crawford suffered from a severe heart impairment...." Plaintiff's Brief, at 11.  At step two, "the claimant must make a threshold showing that [her] medically determinable impairment or combination of impairments significantly limits [her] ability to do basic work activities...." Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).  There is substantial evidence in the record to support the ALJ's finding that Plaintiff does not have a severe heart impairment. In Plaintiff's applications for benefits, Plaintiff alleged she was disabled due to memory loss,

8

bilateral carpal tunnel syndrome, asthma, arthritis in her shoulders and arms, and depression. (TR 66).  Plaintiff first suggested to the agency she was experiencing "chest pains" due to a heart condition in her request for an administrative hearing submitted in November 2003. (TR 105).  She stated that she had been hospitalized at the Pauls Valley General Hospital overnight in October 2003 for "chest pains from heart attack." (TR 106).  Records from the Pauls Valley General Hospital were submitted by Plaintiff for the time period covering this date, and none of the records from this hospital indicate that Plaintiff was treated for or diagnosed as having experienced a myocardial infarction, or heart attack, or for any heart-related condition in October 2003.  (TR 303-341).  Plaintiff stated that during this overnight hospitalization she received only a "nitroglycerin tablet and blood thinner shot." (TR 106).

Plaintiff advised her treating physician, Dr. Gilbert, in November 2003 that she had been hospitalized in October 2003 and that she was initially told at the hospital that she "had a MI," or myocardial infarction, but also stated she was later "told she had GERD," or gastrointestinal reflux disease. (TR 208).  Dr. Gilbert noted that an electrocardiogram and chest x-ray were normal but that he was scheduling Plaintiff for an echocardiogram and exercise tolerance testing. (TR 208).   In December 2003, Plaintiff reported she was experiencing only occasional, substernal chest pain and no shortness of breath. (TR 206).  In February 2004, Dr. Gilbert noted that Plaintiff had undergone exercise tolerance testing, which had been terminated after 1 ½ minutes due to shortness of breath and chest pain. (TR 204).  Dr. Gilbert also noted an echocardiogram showed "severe ant[erior] wall motion [and] marked hypokinesis." (TR 204).  Dr. Gilbert diagnosed Plaintiff at that time with coronary

9

artery disease for which he prescribed medication and advised Plaintiff not to work "for now." (TR 204). Dr. Gilbert's February 2004 office note is not consistent with the actual reports appearing in the record of the exercise tolerance test and echocardiogram conducted on February 5, 2004. These medical reports actually show that Plaintiff exercised for one minute and 46 seconds, that the test was discontinued due to shortness of breath and fatigue without mention of chest pain, and that the echocardiogram was interpreted by the physician who administered the test as a "normal echocardiographic study for [her] age." (TR 244, 245). Dr. Gilbert subsequently noted in March 2004 that a cardiac catheterization of Plaintiff conducted by Dr. Harvey was "negative." (TR 241).

Records of the Pauls Valley General Hospital reflect that Plaintiff sought emergency room treatment there in March 2004 for "tightness in chest" after arguing with her brother. (TR 313). The treating physician noted that Plaintiff gave a history of coronary artery disease and that a chest x-ray and an electrocardiogram conducted at that time were normal. (TR 313-329). Plaintiff was transferred to her treating clinic, the Carl Albert Indian Hospital, where she reported she was not experiencing any chest pain but that she had previously had three myocardial infarctions, the last one being two months before. (TR 296-297). Plaintiff later stated to a treating physician in the emergency room at the Pauls Valley General Hospital in April 2004 that her previous incident of chest pain in March 2004 "was an MI [myocardial infarction] per [patient]." (TR 305). Although Plaintiff complained of chest pain when she sought treatment at the Pauls Valley General Hospital's emergency room in April 2005, when she was examined at the hospital the examining physician noted she was not in

apparent distress and that electrocardiogram testing was normal. However, because Plaintiff had previously been diagnosed with coronary artery disease, she was transferred to Mercy Hospital in Oklahoma City for treatment by Dr. Harvey.  (TR 305, 311).  There are no records of treatment of Plaintiff by Dr. Harvey or at Mercy Hospital in Oklahoma City.

In April 2004, Dr. Gilbert noted that Plaintiff's February 2004 echocardiogram was within normal limits, indicating the physician was correcting his previous mistaken assessment of the echocardiogram report, and that the catheterization report reflected some blockage.  (TR 239).  Significantly, in this office note in April 2004 Dr. Gilbert assessed Plaintiff as having "noncardiac" chest pain and "stable" coronary artery disease, and he advised her to discontinue the cardiac medication he had previously prescribed. (TR 239). This assessment is consistent with a report of an emergency room visit by Plaintiff to Pauls Valley General Hospital in May 2004 during which Plaintiff complained of chest pain. (TR 332-340).  After conducting numerous tests, all of which were normal, the treating physician concluded that Plaintiff was experiencing "non-cardiac chest pain." (TR 332).

At her hearing, Plaintiff stated that she had "passed out" on three occasions and that the last such incident "was a heart attack." (TR 355-356).  She stated that Dr. Gilbert had told her "last week that I have to have three balloons put in but he didn't know when." (TR 358). There are no medical records reflecting a diagnostic recommendation consistent with this statement or indicating that Plaintiff sought treatment for loss of consciousness.  Plaintiff also stated at the hearing that her heart rate was "too low" but she admitted she had always had a slow heart rate. (TR 359-360).  She stated that her "heart problem" prevented her from

working because "you don't ... know when one is gong to hit." (TR 378).   In May 2004, Plaintiff stated to Dr. Gilbert that she was experiencing chest pain only "off and on." (TR 234).

Plaintiff posits that new evidence she submitted to the Appeals Council showed the presence of a severe heart impairment. Plaintiff's Brief, at 11. This evidence consists of the records of two hospitals, the Pauls Valley General Hospital and the Carl Albert Indian Hospital, covering the period of time preceding the ALJ's decision. (TR 295-341).  Contrary to Plaintiff's assertion, this evidence, in particular the treating physician's conclusion during a May 2004 visit by Plaintiff to the Pauls Valley General Hospital's emergency room that her complaint of chest pain was "non-cardiac" (TR 332), supports the ALJ's finding that there is no evidence indicating Plaintiff has a severe impairment due to heart disease. (TR 18).  Plaintiff refers also to evidence contained in these hospital records which "appears to suggest that Ms. Crawford had previously suffered a mycardial [sic] infarction (MI-) or heart attack of some type." Plaintiff's Brief, at 11.  The page reference in the record cited by Plaintiff is a March 7, 2004 report from an examiner at the Carl Albert Indian Hospital reflecting that Plaintiff gave a history of having experienced a myocardial infarction two months before her admission to the hospital. (TR 297).  There is no support in the medical record for this statement or Plaintiff's other statements to treating medical professionals and during her administrative hearing that she had previously experienced one or more myocardial infarctions. (See TR 106, 208, 296, 297, 305, 356). This statement is not evidence of a severe heart impairment but merely Plaintiff's subjective and unsupported description

of her past medical history.  "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a[n] ... impairment." Hawkins, 113 F.3d at 1167.  This statement does not suggest a reasonable possibility of a severe heart impairment, and no error occurred with respect to the Appeals Councils' consideration of the additional evidence submitted with Plaintiff's request for review.

Plaintiff contends that the ALJ also erred in failing to find she has a severe mental impairment.  With respect to the ALJ's determination that Plaintiff has no severe mental impairment, the ALJ explained his reasoning in his decision:

> [C]laimant has suffered the loss of a husband and her mother since her alleged onset date [of February 1998].  She was diagnosed with situational depression.  On December 6, 2000, claimant was prescribed Zoloft for depression, and by February 26, 2001, claimant's depression was noted to be "improved." Although claimant sporadically complained of depression, there is no record of further treatment.  Further, when claimant filed completed [sic] her "Claimant's Medication" on June 7, 2004, claimant did not mention taking any medication for depression. It is further noted that claimant has never sought or received, or been referred for, any treatment from any mental health professional.  There simply is no objective medical evidence in the file that claimant suffers from a medically determinable severe mental impairment.

(TR 18).  Plaintiff posits that there is "other significant evidence" in the record of a severe mental impairment that was ignored by the ALJ.  Plaintiff refers to a consultative psychiatric examination of Plaintiff conducted in February 2001 in which the consultative examiner gave a diagnostic impression following an interview with Plaintiff that Plaintiff was suffering from depression. (TR 149-150).  However, the record shows, and the ALJ so found, that Plaintiff

worked through at least February of 2003, and the consultative examiner's report contains only a diagnosis without any evidence that Plaintiff was treated for a mental impairment. Thus, this report does not reflect evidence of a severe mental impairment, and the ALJ did not err in failing to discuss the report or provide reasons for disregarding it.

Plaintiff also contends that the ALJ erred in failing to discuss or provide reasons for disregarding the opinion of a nonexamining physician with respect to the existence of a severe mental impairment. (TR 165-177).   This report, completed in March 2001 in connection with Plaintiff's previous application for benefits, clearly states that the nonexamining psychologist found Plaintiff did not have a severe mental impairment. (TR 165).  The ALJ did not err in failing to discuss this report.  Contrary to Plaintiff's assertion, the report provides additional support for the ALJ's finding of the absence of a severe mental impairment and does not detract from it.

The record shows that Plaintiff's treating family physician, Dr. Gilbert, prescribed anti-depressant medication for Plaintiff in January 2003 based on Plaintiff's subjective statement that she was depressed since the death of her husband. (TR 232).  Dr. Gilbert's office notes provide no objective evidence of signs or symptoms of depression. (TR 232). Most of the pages referenced by Plaintiff as records of treatment of Plaintiff for depression and anxiety are merely lists of Plaintiff's medications.   (TR 205, 218, 231, 325, 339). Although Dr. Gilbert assessed Plaintiff as having depression or anxiety again in June 2003, he again did not note any objective findings consistent with this assessment. (TR 217).  He indicated Plaintiff continued taking the previously-prescribed anti-depressant medication at

that time. (TR 215).  Dr. Gilbert's subsequent records indicate no further prescriptions for anti-depressant medication were given to Plaintiff. (TR 210, 215).  By November 2003, Dr. Gilbert no longer noted "depression" as one of Plaintiff's medical problems in his office notes. (TR 208).   Although Dr. Gilbert noted Plaintiff's medical problems included an "anxiety disorder" for which he prescribed medication in February 2004, his office note contains no objective findings of anxiety or anxiety-related symptoms. (TR 204-205).  There are no further records of prescriptions for or notations concerning an anxiety-related impairment.  Significantly, as the ALJ reasoned, there is no record that Plaintiff has ever sought treatment from a mental health professional.  At her hearing, Plaintiff vaguely stated that she is depressed because she feels "[n]ot real good."  When pressed to provide more testimony regarding her mental functioning, Plaintiff cryptically stated that she doesn't want to be around other people and cannot remember "some things."  (TR 375, 377).  She could not describe a specific incident of memory loss, and her assertion that she is socially isolated is not consistent with Plaintiff's other statements that she visits friends twice weekly, gets along well with her family, and attends church.  (TR 83, 87, 369).  Plaintiff's friend testified that she sees Plaintiff almost every day. (TR 379).

Without any evidentiary support in the record, Plaintiff posits that a medication, Wellbutrin, was prescribed "to help Ms. Crawford emotionally so she could stop smoking." Plaintiff's Brief, at 13.  The record reflects that Dr. Gilbert repeatedly advised Plaintiff to stop smoking (TR 234, 239, 246, 249, 255) and prescribed Wellbutrin for Plaintiff expressly to assist her to "stop smoking" in April 2004. (TR 239).  There is no hint in this office note

that Dr. Gilbert intended the medication to treat a mental impairment.  Plaintiff's supposition to the contrary is not supported by the record and is without merit.  There is substantial evidence in the record to support the ALJ's finding that Plaintiff does not have a severe mental impairment.

VI. Credibility and RFC for Work

Although there is substantial evidence to support the ALJ's finding that Plaintiff does not have a severe heart or mental impairment, even nonsevere impairments should be considered in combination with any severe impairments. Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5.  Plaintiff first contends that the ALJ erred in failing to consider the effects of Plaintiff's "recurrent episodes of chest pain and shortness of breath" due to her "heart impairment" in determining her RFC for work and in relying on the grids. Plaintiff's Brief, at 11.  Plaintiff stated at her hearing that she had "passed out" on three occasions, although it was not clear from her testimony whether these alleged incidents were caused by chest pain, shortness of breath, a low heart rate, or some other problem. (TR 355-356).  In his decision, the ALJ did not ignore Plaintiff's allegation of disabling chest pain, shortness of breath, and other cardiac- or asthma-related symptoms.  The ALJ considered the Plaintiff's testimony and statements in the record concerning chest pain and other symptoms and evaluated the credibility of the subjective testimony in light of the objective medical evidence.  This is not error.  See Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537(10th Cir. 1990)("Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence.").  The ALJ stated in his decision that there

16

is "evidence of mild stenosis in [Plaintiff's] coronary artery vessels and [she] is on medication; however, there is no medical evidence of [Plaintiff] 'passing out' multiple times due to either her heart or due to asthma." (TR 22). The ALJ also pointed to other evidence reflecting inconsistencies between Plaintiff's testimony and her other subjective statements in the record and referred to inconsistencies between Plaintiff's testimony and objective medical evidence in the record. (TR 21-23). These findings are well supported by the record. There is substantial evidence in the record to support the ALJ's finding concerning the credibility of Plaintiff's assertion of disabling chest pain, shortness of breath, and other subjective symptoms, and the credibility determination will therefore not be disturbed.

Although Plaintiff asserts that the ALJ erred in failing to consider nonexertional mental limitations in determining Plaintiff's RFC for work, Plaintiff points to no objective evidence in the record showing the existence of nonexertional mental limitations. In his decision, the ALJ reviewed the medical evidence, including the reports of the nonexamining state agency physicians, and noted their findings that Plaintiff's physical and mental impairments were "nonsevere." (TR 20). The ALJ stated that although these physicians "may very well be correct" he was giving Plaintiff "the benefit of every possible doubt" in finding that the combination of Plaintiff's physical impairments were severe but that she could perform, at the very least, a full range of sedentary work. (TR 20).

In reaching a determination regarding the credibility of Plaintiff's subjective allegations of disabling symptoms, including her subjective testimony that "she was depressed and wanted to be alone" (TR 22), the ALJ reviewed the objective evidence and

17

subjective testimony under the appropriate standard established in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987), and concluded that her allegations of disabling symptoms were not credible.  This credibility determination is well supported by the record.

As the ALJ pointed out in his decision, Plaintiff has not sought treatment for a mental limitation from a mental health professional.  She has occasionally complained of depression and anxiety and received short-term treatment with anti-depressant and anti-anxiolytic medications. There is no evidence that Plaintiff experienced persistent mental limitations affecting her ability to work.  Her testimony at the administrative hearing was cryptic and vague with respect to her mental functioning.  Plaintiff testified she does not want to be around other people but she also stated that she regularly attends church and visits her friend. (TR 369, 375).  Her friend testified that she saw Plaintiff nearly every day.   (TR 379). Plaintiff vaguely testified that she cannot remember "some things," but she could not specifically describe an episode of memory loss.  (TR 377-378).   There is substantial evidence in the record to support the ALJ's determination that Plaintiff's subjective statements with regard to mental limitations affecting her ability to work were not credible.

Plaintiff contends that she has a significant "hand impairment" that affects her functional ability and that the ALJ erred in failing to consider her "hand impairment" in combination with her arthritis and asthma impairments in determining her RFC for work and in relying on the grids.  Plaintiff's Brief, at 13.  The ALJ found that Plaintiff has a severe impairment due to generalized arthritis.  Consistent with the dictates of <u>Luna</u>, <u>supra</u>, the ALJ's decision reflects his consideration of Plaintiff's allegation that she has disabling pain,

including wrist and hand pain, caused by arthritis.

Plaintiff contends that the ALJ erred in failing to express his consideration of an "x-ray report from 2002 showing [Plaintiff] had changes in the hand that were consistent with degenerative joint disease." Plaintiff's Brief, at 13.[2]  However, in his decision the ALJ set forth the specific evidence on which he relied in reaching his credibility determination with respect to Plaintiff's applications, and his failure to address this specific x-ray report was not error. "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)(quotation omitted).  "Kepler does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  The 2002 x-ray report cited by Plaintiff as evidence of a significant "hand impairment" reflects an unidentified interpreter's assessment of an x-ray of Plaintiff's hands conducted in April 2002. (TR 253).  The interpreter noted only "djd [degenerative joint disease] changes" in Plaintiff's hands. (TR 253).  This brief notation does not assess the severity of the x-ray findings, and the ALJ did not err in failing to discuss this x-ray report.

---

[2]In a one-sentence argument, Plaintiff posits that the ALJ erred by failing to undertake "the proper 4 step analysis" established in Robinson v. Barnhart, 366 F.3d 1078 (10th Cir. 2004), with respect to the ALJ's decision regarding the credibility of Plaintiff's assertion of disabling hand and wrist pain.  The absence of any suggestion as to how this decision relates to the disability decision being appealed, or even a reference to a particular page of the decision, warrants no discussion of the argument.

There is substantial evidence in the record to support the ALJ's finding that Plaintiff's allegations of disabling pain and other symptoms caused by arthritis were not credible. In April 2002, Plaintiff's treating physician noted that Plaintiff's medical problems included "hand pain" for which an anti-inflammatory medication was prescribed. (TR 252). At her follow-up visit to Dr. Gilbert in July 2002, Plaintiff complained of right elbow and right shoulder pain. (TR 249). Dr. Gilbert noted Plaintiff exhibited a "contusion" of her right elbow and shoulder and good range of motion of her right elbow and right shoulder. (TR 249). Although Plaintiff complained in October 2002 of left hand pain, she related it to an incident the previous weekend in which a dog scratched her left hand. (TR 246). Antibiotic medication was prescribed for her infected left hand due to a dog scratch. (TR 246).

In his decision, the ALJ accurately summarized the findings of the consultative examiner, Dr. Howard, who examined Plaintiff in June 2003. (TR 19, 183-184). Dr. Howard reported Plaintiff's statement to the physician that she was unable to work because of left wrist pain, arthritis, and asthma. (TR 183). According to Dr. Howard, a physical examination revealed no limitations in movement except for some limited dorsiflexion of the left wrist. He stated Plaintiff could grasp and finely manipulate objects, and his assessment was that Plaintiff has left wrist pain of unknown origin and "arthritis" by history only, asthma, and nicotine addiction. (TR 184).

The ALJ also accurately summarized the medical record with respect to treatment of Plaintiff for "bilateral wrist pain." (TR 19). Plaintiff was treated conservatively by her family physician, Dr. Gilbert, with wrist splints and medication for wrist tendinitis between

20

January 2003 and June 2003.  (TR 226-232, 217).  Dr. Gilbert referred Plaintiff to an orthopedic specialist, Dr. Black, who found "minimal clinical findings" of any wrist impairment and recommended that Plaintiff receive physical therapy, which she failed to do. (TR 222, 226).  She was not wearing the previously-prescribed wrist splints when she was seen by Dr. Black in May 2003, although she requested a note for her employer stating that she could not work because of her wrists. (TR 222).  When she saw Dr. Gilbert in a follow-up examination in June 2003, she reportedly stated that her hand pain was not improved. (TR 217).  Dr. Gilbert found her wrists were tender over the lateral aspect, and he prescribed anti-inflammatory medication. (TR 217).  However, there are no further records of treatment of Plaintiff for wrist pain or a hand impairment.

The ALJ accurately summarized Plaintiff's testimony at her hearing in his decision. (TR 21-22).  At her hearing, Plaintiff testified that she has "moving arthritis" that affects her right shoulder, right wrist, and both knees, and that she had undergone cortisone injections in her wrists but no surgery.  (TR 360-362).  She stated that it is difficult to grip objects with her hands and that she drops things and her hands "go numb." (TR 370-371).

However, the objective medical evidence, as found by the ALJ, is not consistent with Plaintiff's allegations of hand or wrist restrictions.  A consultative physical examiner, Dr. Whitehouse, who examined Plaintiff in February 2001 in connection with her previous disability application, assessed Plaintiff as having "moving arthritis" but intact strength throughout her body and no evidence of inflammation or ulnar deviation consistent with rheumatoid arthritis. (TR 153).  Dr. Whitehouse noted that Plaintiff was neurologically and

skeletally intact except for right upper shoulder pain and that Plaintiff was observed walking and getting into her car without difficulty. (TR 154).   In the report of his consultative examination of Plaintiff in June 2003, Dr. Howard noted that Plaintiff exhibited full range of motion in her shoulders, elbows, wrists, hands, hips, knees, ankles, feet, and back and that she walked with a stable, solid gait and without any observed problem. (TR 183-184).

There is substantial evidence in the record to support the ALJ's finding that despite Plaintiff's severe impairments due to arthritis and asthma, she has the functional ability to perform work at the sedentary level. The agency describes sedentary work as work involving lifting no more than ten pound objects and mostly sitting. 20 C.F.R. §§ 404.1567(a), 416.967(a)(2005).   The objective medical evidence in the record and Plaintiff's own statements regarding her daily activities provide substantial evidence supporting the ALJ's finding of the ability to perform the exertional requirements of sedentary work.  Plaintiff testified that she takes nitroglycerin tablets when she feels her breathing is restricted. (TR 357-358).  Plaintiff informed her treating physician that she only occasionally experienced chest pain. (TR 206, 234).  Plaintiff testified that she has arthritis in various parts of her body, including her shoulders, right wrist, and knees and that she cannot "do much" because of pain. (TR 361).  However, objective medical evidence in the record, including the office notes of her treating physician, reflects that Plaintiff has been treated only conservatively with anti-inflammatory medications and, for short period of time, wrist splints.

Although Plaintiff complained of frequent swelling in her feet and ankles at her hearing, Plaintiff did not persistently seek treatment for swelling in her feet, and no doctor

has indicated that swelling in Plaintiff's feet would limit her ability to work.  Indeed, no doctor has stated that Plaintiff's ability to work is limited by arthritis or arthritis-related symptoms.  Plaintiff complained of hand numbness and an absence of grip strength.  However, there is no objective medical evidence showing that Plaintiff's grip strength was decreased or that numbness affected her ability to use her hands.  As the ALJ pointed out in his decision, Plaintiff's "pulmonary function studies have been remarkably good," and the objective medical evidence does not reflect limitations of Plaintiff's lung function that would preclude her performance of sedentary work.  (TR 21, 160, 265).  She takes medications for asthma and is able, by her own testimony, to perform such activities as laundry, dishwashing, sweeping, mopping, grocery shopping with her daughter or son, visiting friends, and attending church.  Accordingly, the ALJ's RFC determination is supported by substantial evidence in the record.

VII. Reliance on the Grids

Because the ALJ found that Plaintiff could perform the full range of sedentary work, the ALJ applied the grids to determine if there were other jobs that Plaintiff could perform, and he concluded that Plaintiff was not disabled at the final step of the requisite sequential evaluation procedure.  It is well established in this circuit that "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain."  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).  Nevertheless, "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids."  Id.  Thus, "an ALJ may not rely conclusively on the grids unless he finds ... that the claimant has no

significant nonexertional impairment," and this finding must be supported by substantial evidence. Id.  The ALJ made an express finding in his decision that Plaintiff's pain is not significant. (TR 22).   The ALJ stated that although Plaintiff may experience some discomfort, the objective evidence revealed that she exhibited "relatively mild symptoms," that the record did not contain signs of severe pain, or pain significant enough to preclude the performance of sedentary work. (TR 22-23).  For the same reasons previously cited in connection with the ALJ's credibility determination, the ALJ's determination with respect to the significance of Plaintiff's allegations of nonexertional impairments is supported by substantial evidence in the record.  Accordingly, the ALJ's reliance on the grids satisfies the Commissioner's burden of proving that other jobs are available which Plaintiff can perform despite her severe impairments.  Hence, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for disability insurance and supplemental security income benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___May 18th___, 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter.

ENTERED this _____28th_____ day of _____April_____, 2005.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE